UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

MARKIECE PALMER,

    Plaintiff

v.

TIM GARRETT, *et al.*,

    Defendants

Case No.: 3:23-cv-00479-CSD

**Order**

Re: ECF Nos. 48, 49, 51, 54

Before the court are cross-motions for summary judgment filed by Plaintiff and Defendants. (ECF Nos. 48, 49, 51, 54.) The parties have filed their responses and replies. (ECF Nos. 55, 58, 63, 64.)

For the reasons set forth below, Defendants' motion is granted, and Plaintiff's motion is denied.

## I. BACKGROUND

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this civil rights action pursuant to 42 U.S.C. § 1983. The events giving rise to this action took place while Plaintiff was housed at Lovelock Correctional Facility.

The court screened Plaintiff's complaint and allowed Plaintiff to proceed with the following claims: (1) an Eighth Amendment claim for deliberate indifference to a serious medical need against Defendants Dr. Dana Marks, Dr. David Rivas, Director of Nursing (DON) Erin Parks, and former Warden Tim Garrett; and (2) a Fourteenth Amendment equal protection claim against Dr. Marks. The parties now move for summary judgment.

The record reflects the following undisputed facts. In January 2019, Plaintiff was referred to an ophthalmologist for evaluation of suspected glaucoma. (ECF No. 48-1 at 2-3, 5.) Following testing, Plaintiff was diagnosed with mild glaucoma and started on Latanoprost, artificial tears, and fish oil. (ECF No. 48-2 at 45; ECF No. 51-1 at 76-80.) In January 2020, the optometrist who examined Plaintiff described his glaucoma as "mild stable," and continued Plaintiff on the same medication regime. (ECF No. 48-2 at 46-47.)

On January 28, 2020, Plaintiff was transferred to LCC. (ECF No. 49-1 at 2.) Following his transfer, Plaintiff continued to receive Latanoprost, artificial tears, and fish oil. (*See* ECF No. 51-1.)

On September 13, 2021, Plaintiff submitted a medical kite stating: "Currently [I'm] receiving Artificial tears but they burn my eyes really bad to the point it's hard to keep using. I would like to change my prescription to Xiidra or any other drops that don't burn when applied." (ECF No. 48-1 at 11; ECF No. 51-1 at 218.) Defendant Marks responded: "It's from the smoke, and the other medication won't help." (ECF No. 48-1 at 11; ECF No. 51-1 at 218.)

On September 23, 2021, Plaintiff submitted another medical kite, this one stating: "I need to see an optometrist, my eyes hurt and I have glaucoma. I have not seen an eye doctor in almost two years." (ECF No. 48-1 at 12; ECF No. 51-1 at 215.) The response to this grievance was: "We do not have an eye dr [at] this time. You've been added to the list to be seen." (ECF No. 48-1 at 12; ECF No. 51-1 at 215.)

On May 13, 2022, Plaintiff submitted a medical kite stating: "I need to see an optometrist, my eyes burn and hurt. I have glaucoma and haven't seen an eye doctor in over two years. Also the artificial tears [I'm] currently receiving burn when applied from the last five years." (ECF No. 51-1 at 199.) Apparently in response, Plaintiff was seen by an optometrist on

July 9, 2022. The optometrist recommended preservative-free artificial tears and Latanoprost and a referral for glaucoma testing. (ECF No. 48-1 at 9; ECF No. 51-1 at 65-68.) After this exam, Marks began prescribing preservative-free artificial tears for Plaintiff. (ECF No. 51-1 at 28, 62.) Marks also requested the outside consult for glaucoma testing, which was scheduled for April 22, 2023, with an ophthalmologist. (*See id.* at 64, 67-68.)

In December 2022, Marks discontinued Plaintiff's fish oil prescription, to which Plaintiff objected. (ECF No. 48-1 at 13; ECF No. 51-1 at 6, 9.)

On January 23, 2023, Plaintiff submitted a grievance complaining that he had seen an optometrist only once in the last three years, that the artificial tears burned his eyes to the point it was difficult to keep using them, and about the denial of fish oil. (ECF No. 48-1 at 16-18.) The grievance was denied at the informal level in September 2023 with a response that "fish oil was not approved due to it is a nonformulary medication." (*Id.* at 15-16.) The final denial, in April 2024, was on similar grounds and further pointed out that Plaintiff was receiving the necessary treatment for his condition, which was the Latanoprost drops. (*Id.* at 20.)

On April 22, 2023, Plaintiff missed his ophthalmology testing appointment when he was transported to the wrong location. (ECF No. 48-1 at 24; ECF No. 51-1 at 54.) At some point after that, the ophthalmologist Plaintiff was supposed to have seen stopped accepting glaucoma patients from LCC. (ECF No. 49-4 at 2, 13, 38.)

On August 3, 2023, and August 4, 2023, Plaintiff submitted two medical kites requesting to be seen by an ophthalmologist for his glaucoma. (ECF No. 48-1 at 31, 33.) The response indicated that medical was aware of Plaintiff's situation and working on getting a provider. (*Id.* at 33.)

3

1       On September 5, 2023, Plaintiff underwent testing for his glaucoma (ECF No. 51-1 at 67, 69-71.)

On February 18, 2024, Plaintiff was examined by an optometrist; his glaucoma was classified as mild, and the doctor recommended continuing Latanoprost and annual testing. (ECF No. 51-1 at 64.)

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law").

In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted).

In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute

be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

## III. DISCUSSION

A. Eighth Amendment Deliberate Indifference

"The government has an 'obligation to provide medical care for those whom it is punishing by incarceration,' and failure to meet that obligation can constitute an Eighth Amendment violation cognizable under § 1983." *Colwell v. Bannister,* 753 F.3d 1060, 1066 (9th Cir. 2014) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976)).

A prisoner can establish an Eighth Amendment violation arising from deficient medical care if he can prove that prison officials were deliberately indifferent to a serious medical need. *Estelle*, 429 U.S. at 104. A claim for deliberate indifference involves the examination of two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *rev'd on other grounds, WMX Tech, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997). "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059 (citing *Estelle*, 429 U.S. at 104).

Examples of conditions that are "serious" in nature include "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id.* at 1059-60; *see also Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (citation omitted) (finding that inmate whose jaw was broken and mouth was wired shut for several months demonstrated a serious medical need).

If the medical need is "serious," the plaintiff must show that the defendant acted with deliberate indifference to that need. *Estelle*, 429 U.S. at 104. "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Deliberate indifference entails something more than medical malpractice or even gross negligence. *Id*. Inadvertence, by itself, is insufficient to establish a cause of action under section 1983. *McGuckin*, 974 F.2d at 1060. Instead, deliberate indifference is only present when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Deliberate indifference exists when a prison official "den[ies], delay[s] or intentionally interfere[s] with medical treatment, or it may be shown by the way in which prison officials provide medical care." *Crowley v. Bannister*, 734 F.3d 967, 978 (9th Cir. 2013) (internal quotation marks and citation omitted).  "'[A] prisoner need not prove that he was completely denied medical care' in order to prevail" on a claim of deliberate indifference. *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012) (quoting *Lopez*, 203 F.3d at 1132), *overruled on other grounds*, *Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014). Where delay in receiving medical treatment is alleged, a prisoner must demonstrate that the delay led to further injury.

*Stewart v. Aranas,* 32 F.4th 1192, 1195 (9th Cir. 2022) (citing *Shapley v. Nev. Bd. of State Prison Comm'rs,* 766 F.2d 404, 407 (9th Cir. 1985)); *McGuckin,* 974 F.2d at 1060.

"A difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." *Snow,* 681 F.3d at 987 (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). Instead, to establish deliberate indifference in the context of a difference of opinion between a physician and the prisoner or between medical providers, the prisoner "'must show that the course of treatment the doctors chose was medically unacceptable under the circumstances' and that the defendants 'chose this course in conscious disregard of an excessive risk to plaintiff's health.'" *Snow*, 681 F.3d at 988 (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

"The provision of some medical treatment, even extensive treatment over a period of years, does not immunize officials from the Eighth Amendment's requirements." *Edmo v. Corizon* 935 F.3d 757, 793 (9th Cir. 2019) (citation omitted).

As Defendants point out, Plaintiff has received treatment for his glaucoma – Latanoprost -- since being diagnosed in 2019, and he does not claim to have ever been denied Latanoprost. (*See* ECF No. 49-5 at 65.) Rather, what Plaintiff alleges Defendants failed to do was: (1) provide different artificial tears after he complained about their burning; (2) continue providing him with fish oil; and (3) allow him to see an ophthalmologist for treatment of his dry eye and glaucoma.[1]

        i. Artificial Tears

Plaintiff claims he was prescribed and used artificial tears for eight years and made complaints about the burning they caused throughout that time. However, the record does not

---

[1] Plaintiff also alleges Defendants interfered with his treatment plan, but this claim is based on Defendants' other alleged failures and so it will not be analyzed separately.

8

support this claim. The earliest grievance submitted into evidence is from September 2021, and there are three complaints during the relevant time period in total: the September 2021 kite, the May 2022 kite, and the grievance commenced in January 2023. Aside from those three documents, the record is full of requests from Plaintiff requesting a refill of his artificial tears -- in some cases going so far as to emphasize how much he needed them. (*See* ECF No. 51-1 at 7, 8, 14, 20, 153, 154, 155, 156, 158, 163, 166, 167, 170, 171, 172, 173, 176, 177, 181, 182, 191, 196, 198; *id.* at 173 ("I am almost out of artificial tears and would like a refill because my eyes are really dry and causing head aches."); *id.* at 5 (kite dated January 4, 2023, stating: "[T]his is my 3rd requesting my artificial tears. I have chronic "Dry Eyes" and failure to lubricate consistently causes blood spots to appear on my eyes. And they burn and feel like sand is being rubbed in my eyes.").

Plaintiff does not provide any evidence that use of the drops resulted in "unnecessary and wanton infliction of pain" or further significant injury. Rather, the evidence before the court is that the drops burned "when applied." Other courts have considered similar types of complaints and have concluded that this type of temporary eye irritation does not rise to the level of a serious medical need for purposes of the Eighth Amendment. *See Heard v. Gregg County Med. Staff*, No. 6:24CV387, 2024 WL 5278868, at *4 (E.D. Tex. Nov. 20, 2024), *report and recommendation adopted*, No. 6:24-CV-387-JDK-JDL, 2025 WL 28249 (E.D. Tex. Jan. 3, 2025) ("[T]his Court has previously held that temporary burning[,] swelling and irritation in an inmate's eyes did not constitute the substantial risk of serious harm required by the objective prong.") (internal punctuation omitted); *Kimble v. Lexus of New Orleans*, No. CV 18-7918, 2019 WL 1472869, at *6 (E.D. La. Jan. 11, 2019), supplemented, No. CV 18-7918, 2019 WL 1474328 (E.D. La. Feb. 28, 2019), *and report and recommendation adopted*, No. CV 18-7918, 2019 WL

1469442 (E.D. La. Apr. 3, 2019), *and report and recommendation adopted*, No. CV 18-7918, 2019 WL 1469442 (E.D. La. Apr. 3, 2019) ("[I]t cannot be concluded that the periodic burning, eye dryness and vision problems that plaintiff described presented a serious medical need that posed a substantial risk of harm for purposes of constitutional analysis."). Further, when Plaintiff was examined in May 2024 following more complaints of burning, no eye injury, redness or drainage was noted. (ECF No. 48-1 at 38-40.) Accordingly, the court concludes the burning caused by Plaintiff's artificial tears was not a serious medical need within the meaning of the Eighth Amendment.

Even if the burning did rise to the level of a serious medical need, however, the evidence does not support a conclusion that Defendants acted with deliberate indifference. Plaintiff argues that Defendants were or should have been aware of a substantial risk to Plaintiff's safety because Plaintiff had been complaining about the burning for years. As already noted, the record lacks any complaints about burning prior to September 2021. The evidence establishes that Defendant Marks learned of Plaintiff's complaint in September 2021, at a time when it is undisputed significant wildfires were burning in the area. Marks concluded that a burning sensation reported for the first time during significant wildfires was likely attributable to the wildfire smoke. Given these facts, and Marks' reasonable professional medical opinion that the smoke was to blame, there is no evidence to support a conclusion that Marks knew of and disregarded an excessive risk to Plaintiff's health or safety when he denied Plaintiff's September 2021 kite.

When Plaintiff complained for the second time, he was scheduled for an eye exam shortly thereafter, and at that time he was switched to "preservative free" drops. Plaintiff's request for different artificial tears was at that point granted, and he cannot demonstrate that Defendants ignored a substantial risk to his health or safety in doing so.

By January 2023, Plaintiff was again complaining that the artificial tears were burning his eyes, and there is no apparent response to this complaint on the record. However, Plaintiff has not offered any evidence to support a claim that the burning caused by the artificial tears was a substantial risk of serious harm, nor is there evidence in the record that the Defendants should have known that. Accordingly, Plaintiff has not established that Defendants were deliberately indifferent in the face of his complaints about the artificial tears.

2. Fish oil

Plaintiff contends Defendants were deliberately indifferent when they stopped prescribing him fish oil, which had been recommended by the doctor who had diagnosed his glaucoma in 2019. However, the record reflects that Marks discontinued the fish oil prescription in December 2022, after the Plaintiff's July 2022 eye exam report did not include a recommendation for fish oil. The doctor who saw Plaintiff in July 2022 was not the same doctor who saw him in 2019 and 2020. This difference of opinion between Plaintiff's doctors, and more generally between Plaintiff and Defendants, does not amount to deliberate indifference, and Plaintiff has not shown that the refusal to prescribe him fish oil was "medically unacceptable under the circumstances." *See Snow*, 681 F.3d at 987-88.

Furthermore, Plaintiff admits that fish oil was available for him to purchase through the commissary, and the record reflects he was aware of this fact no later than May 2023, when he was advised as much by Federal Public Defender counsel. (ECF No. 49-5 at 4-5; ECF No. 48-1 at 25.) Plaintiff thus has not established that Defendants refusal to prescribe him fish oil after December 2022 amounted to deliberate indifference.

///

///

### 3. Ophthalmologist v. Optometrist

Plaintiff contends that Defendants' refusal to schedule him to see an ophthalmologist for his eye conditions amounted to deliberate indifference. The record reflects that Plaintiff was examined by an optometrist in January 2020 and July 2022, and then scheduled for a referral out to an ophthalmologist on April 22, 2023, for testing of his glaucoma. As noted, the April 2023 appointment was missed because Plaintiff was mistakenly taken to the wrong location, and after that the ophthalmologist would no longer see LCC glaucoma patients. Plaintiff's glaucoma testing ultimately took place on September 5, 2023, after which Plaintiff was evaluated again by an optometrist in February 2024, and his glaucoma was determined to still be mild.

Plaintiff's kites up until August 2023 requested to be seen by an optometrist. In his kites dated August 3, 2023, and August 4, 2023, Plaintiff changed this request to be seen specifically by an ophthalmologist. Whatever Plaintiff may have requested, he has not established that the treatment and monitoring of his glaucoma condition was required to be done by an ophthalmologist as opposed to an optometrist such that the failure to have Plaintiff seen by an ophthalmologist amounted to deliberate indifference.

Moreover, Defendants attempted to have Plaintiff evaluated by an ophthalmologist, but the treatment was thwarted by forces outside their individual control. And while there were certainly some delays in having Plaintiff seen and treated by an optometrist throughout the relevant time period,[2] Plaintiff has not established that these delays led to further injury. Plaintiff continued throughout this time to receive the Latanoprost eye drops that treated his glaucoma condition, and the record does not reflect any deterioration in Plaintiff's condition due to the

---

[2] The timing suggests, as Defendants argue, that at least some of this delay is attributable to the COVID-19 epidemic, which began shortly after Plaintiff's transfer to LCC.

delays in monitoring the progression of his disease. This is especially so as, even after follow-up testing, his treatment plan remained the same. Accordingly, Plaintiff has not established Defendants were deliberately indifferent to his medical needs because he was not seen by an ophthalmologist and his appointments with optometrists were otherwise delayed.

As there is no genuine issue of material fact and the evidence otherwise establishes that Defendants were not deliberately indifferent to Plaintiff's serious medical needs, summary judgment will be granted in Defendants' favor.

B. Equal Protection

The Fourteenth Amendment prohibits the denial of "the equal protection of the laws." U.S. Const. amend XIV, § 1. This "is essentially a direction that all persons similarly situated should be treated alike." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). "This does not mean, however, that all prisoners must receive identical treatment and resources." *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013) (citations omitted).

"To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Furnace*, 705 F.3d at 1030 (quoting *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998)). Where state action does not implicate a protected class, a plaintiff can establish a "class of one" equal protection claim by demonstrating that he or she "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Squaw Valley Dev. Co. v. Goldberg*,

375 F.3d 936, 944 (9th Cir. 2004), *overruled on other grounds by Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th Cir. 2008).

Plaintiff asserts that Defendant Marks violated his right to Equal Protection by denying him fish oil and by not providing a different brand of artificial tears. While he claims that several other inmates similarly situated to him have been treated differently, he provides only one declaration for each situation.

Inmate Tommie Turner states that he has received and continues to receive fish oil since the beginning of COVID-19 and that they help. (ECF No. 48-1 at 92.) Turner does not, however, state what he receives fish oil for or what doctor recommended it, and Plaintiff does not otherwise establish how he and Turner are similarly situated. Plaintiff has not therefore come forward with evidence showing that he was treated differently from other similarly situated inmates with regard to the failure to prescribe fish oil.

Inmate Dushon Green states that he was on artificial tears that were burning his eyes, so "the eye doctor" prescribed him Thera Tears. (*Id.* at 101.) Green does not state when this occurred, what he was being treated for, or whether any of the named defendants were involved. Plaintiff has not therefore presented any evidence showing that he was treated differently from other similarly situated inmates with regard to the failure to change his artificial tears.

Plaintiff has not established a genuine issue of material fact on his equal protection claim, and summary judgment in Defendant Marks' favor will therefore be granted.

/ / /

/ / /

/ / /

## IV. CONCLUSION

(1) Defendants' motion for summary judgment (ECF No. 49) is therefore GRANTED.

(2) Plaintiff's motion for summary judgment (ECF No. 48) is therefore DENIED.

(3) The Clerk of Court shall enter final judgment accordingly.

**IT IS SO ORDERED**.

Dated: July 28, 2025

_____
Craig S. Denney
United States Magistrate Judge